UNITED STATES of America, Appellee,

v.

**Jan Dil KHAN, Defendant-Appellant.**

**No. 374, Docket 85–1230.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 4, 1985.

Decided March 25, 1986.

Thomas M. O'Brien, New York City (The Legal Aid Soc., Federal Defender Services Unit, New York City, of counsel), for appellant.

Stephen F. Markstein, New York City (Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., Celia Goldwag Barynholtz, Asst. U.S. Atty. for the S.D. of N.Y., of counsel), for appellee.

Before FRIENDLY,* MANSFIELD, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

This case, which arises out of a scheme to smuggle heroin into our country, presents only one question deserving more than summary discussion: Should the district court have dismissed certain counts charged against the defendant in the superseding indictment on the ground that they were added only as a result of "prosecutorial vindictiveness" in response to defendant's rejection of plea discussions and his request for a jury trial after trial on the original indictment resulted in a hung jury? Finding no reason to invoke a presumption of vindictiveness, no evidence of actual vindictiveness, and no merit to defendant's other claims, we affirm the convictions.

## BACKGROUND

In January 1984 the defendant, Jan Dil Khan, asked an acquaintance, Abdul Qadir Mazari, for the names of individuals in the United States or Europe who might want to buy heroin, since Khan could arrange delivery. At the time, both men lived in Pakistan. After falsely telling Khan that he had buyers in the west, Mazari informed a United States Drug Enforcement Agency (DEA) agent in Pakistan that Khan wanted an outlet for heroin in the United States.

Working in cooperation with DEA agents, Mazari, on two separate occasions, arranged for Khan's United States associates to sell to an undercover DEA agent heroin that Khan had previously secreted

---

* After oral argument of this case Judge Friendly died. Since the remaining members of the panel are in agreement, the appeal is being decided by them. Second Circuit Rule § 0.14(b).

in New Jersey. Following these two sales, Khan and Mazari traveled to the United States in order to straighten out certain misunderstandings that had arisen between Khan and his associates here, and to meet with Mazari's buyers.

Khan, Mazari, and the undercover DEA agent, posing as a buyer, met in New York on April 9, 1984, when in response to the agent's query, Khan stated that he could supply the agent with 200 kilograms of top grade heroin. Two days later, when the three met again, Khan said that he expected two heroin couriers to arrive from Pakistan over the weekend and that he would have samples available the following week. Shortly thereafter, however, Khan learned that the couriers had been arrested—one in Pakistan and one in England. When Khan, Mazari, and the agent met for the third time, on April 15, Khan told the agent the expected couriers had been arrested. He requested the agent's patience and assured him that a sample would be forthcoming.

On April 23 Khan told Mazari that he intended to return to Pakistan, but wanted Mazari to remain in New York and receive shipments of heroin to pass on to the buyer. Mazari agreed. Two days later the three met for a final time. Khan told the agent that he would try to get him "first quality" heroin in "quantities of 15, 20 and even 25" kilos once they got the "business started". At the end of the meeting, Khan was arrested.

A four-count indictment charged Khan and an associate with one count of conspiracy to distribute heroin and three counts of distributing heroin. The associate pled guilty to two of the counts. Khan's trial ended on August 28, 1984, in a mistrial caused by a hung jury.

After the mistrial, the Assistant United States Attorney (AUSA) then in charge of the prosecution discussed with Khan's attorney the possibility of Khan's pleading guilty to a violation of 21 U.S.C. § 843(b) (using a telephone in connection with a drug transaction). Khan refused, however, and chose instead to have a retrial. Another AUSA took charge of the case, and he,

too, discussed the possibility of a guilty plea, specifically noting that a superseding indictment might be returned prior to retrial; but Khan again refused to plead guilty.

In the latter half of October, one of Khan's associates agreed to cooperate more extensively with the government and, according to the government, provided new evidence of other crimes properly chargeable against Khan. Khan contends that this "new" evidence had been available to the government before the first trial.

On October 26, 1984, a grand jury returned the instant 16-count superseding indictment charging Khan and several other defendants with conspiracy to import heroin (count 1), conspiracy to possess and distribute heroin (count 2), importation of heroin (count 3), various distributions of heroin (counts 4, 5, 7, 9, 11, 12, and 13), and attempted importation of heroin (count 16), together with five other violations (counts 6, 8, 10, 14, and 15) which were not submitted to the jury and are not relevant to this opinion. Only then did Khan express an interest in pleading to a lesser charge, but the AUSA informed defense counsel that such a plea was no longer acceptable.

Khan's retrial commenced on February 4, 1985, and ended on February 13, with guilty verdicts against Khan on each of the submitted counts. The district court sentenced Khan to four years' imprisonment, followed by five years of probation and a five-year special parole term.

On appeal Khan contends that: (1) the district court should have dismissed counts 1, 3, 4, 5, 7, 9, and 16 of the superseding indictment because of "prosecutorial vindictiveness"; (2) the evidence on those seven counts was insufficient to support the convictions; and, (3) the district court erred by permitting a DEA agent to testify as an expert about heroin trafficking in Pakistan. For the reasons below, we affirm.

## DISCUSSION

1. *Prosecutorial Vindictiveness.*

Appellant first argues that the district court should have dismissed the counts

added in the superseding indictment on the ground that an unrebutted presumption of prosecutorial vindictiveness arose when these counts were added following appellant's rejection of a plea to a lesser offense in lieu of a second trial and the assertion of his right to a jury trial.

In a series of cases beginning with *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court has recognized the "basic— and itself uncontroversial—principle", *United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982), that to punish "a person because he has done what the law plainly allows him to do is a due process violation", *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978). In *Pearce*, which involved an increased sentence on a second conviction, without explanation or justification by the sentencing judge, after defendant had successfully challenged his first conviction on appeal, the Court held that

> Due process of law * * * requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

*Pearce*, 395 U.S. at 725, 89 S.Ct. at 2080.

In *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Court addressed the problem of vindictiveness by a prosecutor. There, a defendant, following his conviction on a misdemeanor charge in state district court, exercised his right under state law to a *de novo* trial in state superior court. Before the new trial began, however, the prosecutor obtained a felony indictment against the defendant based on the same conduct that supported the challenged misdemeanor conviction.

Reviewing defendant's conviction on the felony indictment, the Supreme Court reasoned that "the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness' ". *Id.* at 27, 94 S.Ct. at 2102. Noting that a prosecutor under North Carolina's two-tiered system had a considerable stake in discouraging convicted misdemeanants from choosing a *de novo* trial, namely, minimizing the expenditure of prosecutorial resources necessary for final conviction, the Court feared that the state might attempt to insure that only the most hardy defendants would exercise that right by "upping the ante" through a felony indictment. *Id.* at 28, 94 S.Ct. at 2102. Reasoning that a defendant was entitled to pursue his right to a *de novo* trial without apprehension of a retaliatory response, the Court held that the felony indictment violated due process.

Later, in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), and *United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), the Court reviewed claims of prosecutorial vindictiveness arising from defendants' assertion of protected rights in a pretrial context. In both cases, prosecutors had indicted defendants on more serious charges after they had declined to plea-bargain.

In upholding the defendant's conviction in *Bordenkircher*, the Court explained that the due process violations in cases such as *Pearce* and *Blackledge* "lay not in the possibility that a defendant might be deterred from the exercise of a legal right [citations omitted] but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction." *Bordenkircher*, 434 U.S. at 363, 98 S.Ct. at 667. Reasoning that in the "give-and-take" of plea bargaining there is no element of retaliation so long as a defendant remains free to accept or reject the offer, *id.*, the Court concluded that the prosecutor did not violate the defendant's due process rights by—as he had warned

the defendant he would in the absence of a plea—obtaining an indictment on more serious charges than those contained in the first indictment.

In *Goodwin*, the defendant tried to distinguish *Bordenkircher* on the ground that Goodwin had not only refused to plead guilty and had thereby forced the government to prove its case, but he had also demanded a jury trial. *Goodwin*, 457 U.S. at 383, 102 S.Ct. at 2493. Given an absence of evidence of actual vindictiveness, the Court reasoned that the case warranted reversal only if there was a presumption of vindictiveness "applicable in all cases". *Id.* at 381, 102 S.Ct. at 2492. Concluding that no such presumption was warranted either by the not guilty plea or the jury demand, the Court affirmed the conviction.

At first glance, Khan's claim that a presumption of vindictiveness should arise when a prosecutor adds charges to an indictment after a defendant rejects plea negotiations and demands a jury trial might seem frivolous in light of the holding in *Goodwin*. But the fact that Khan's demand also followed a mistrial does alter the situation slightly.

Much of the rationale for the Supreme Court's refusal to adopt an "inflexible presumption" in *Goodwin* and *Bordenkircher* loses its persuasiveness under the present circumstances. For example, the Court explained in *Goodwin* that in the course of preparing for a trial, the prosecutor might either uncover additional information that suggests a basis for further prosecution, or might attach broader significance to the information that he already possessed. By contrast, the Court reasoned, once trial begins—and certainly after conviction—it is much more likely that the state has uncovered and assessed all of the information about the accused and has determined the extent to which he should be prosecuted. Thus, a pretrial change in the crimes charged was much less likely to be a product of vindictiveness than a post-trial change. *Goodwin*, 457 U.S. at 381, 102 S.Ct. at 2492.

In the instant case, one trial already having been had, the prosecution was certainly not in its incipient stages, and the alleged vindictiveness did not occur until after the first trial had ended with a hung jury. While such timing does not necessarily compel the conclusion that a change in the indictment was a product of vindictiveness, it does make that possibility more likely than would a change at a pre-trial stage before the prosecution has had a chance fully to assess the evidence.

The Court also reasoned in *Goodwin* that a jury trial—as opposed to a bench trial—"does not require the duplicative expenditure of prosecutorial resources before a final judgment may be obtained." *Id.* at 383, 102 S.Ct. at 2493. The Court distinguished the situation before it from those in *Pearce* and *Blackledge* where the defendants had required such a duplicative use of resources by forcing a complete new trial.

Here, the prosecutor was forced to do something over again that he thought he had done correctly the first time. *Goodwin*, 457 U.S. at 383, 102 S.Ct. at 2493. As the district court noted below: "The duplication of effort, in light of scarce prosecutorial resources, as well as the known risk of acquittal after a hung jury are factors that resemble the 'institutional pressure [that] might also subconsciously motivate a vindictive prosecutorial response.'" District Court Memorandum Decision of January 15, 1985, at 4 (quoting *Goodwin*, 457 U.S. at 377, 102 S.Ct. at 2490).

The Court further noted in *Goodwin* that a "prosecutor has no 'personal stake' in a bench trial and thus no reason to engage in 'self-vindication' upon a defendant's request for a jury trial." *Goodwin*, 457 U.S. at 383, 102 S.Ct. at 2493. Although the prosecutor here may have had no particular concern whether the retrial was by judge or jury, particularly since the first trial had been before a jury, he conceivably had some personal stake in the fact that there had to be a retrial at all.

■ Despite all this, however, the circumstances here pose no "realistic likeli-

hood" of vindictiveness sufficient to warrant applying a presumption of vindictiveness. It was not the defendant's request for a trial that precipitated the possible duplication of resources and raised the spectre of the prosecution avenging the defendant's rightful exercise of a constitutional right. The root cause of these troubles was the jury's inability to agree on a verdict which in turn caused the mistrial. But the government did not object to the mistrial. After the jury had sent a series of notes to the judge indicating a hopeless deadlock, the following colloquy ensued among the Court, defendant's counsel, Mr. Joy, and the AUSA, Mr. Fardella:

> Mr. Joy: I think you ought to at this stage declare a mistrial.
>
> The Court: Mr. Fardella.
>
> Mr. Fardella: I guess that's what we will have to do.
>
> The Court: I don't see any alternative. I take it counsel agree?
>
> Mr. Joy: Yes, your Honor.
>
> Mr. Fardella: Yes.

It is difficult to see how this would prompt a prosecutor to act vindictively towards a defendant; all agreed that the action taken by the Court was necessary under the circumstances. *United States v. Thurnhuber,* 572 F.2d 1307, 1310 (9th Cir.1977). Defendant did nothing here that was likely to inspire the wrath of the prosecutor.

We emphasize that we do not have a situation before us where the district court granted defendant's motion for a mistrial, over the government's objection, due to some error in the conduct of the trial, *see, e.g., United States v. Jamison,* 505 F.2d 407 (D.C.Cir.1974) (prosecutorial vindictiveness found where government reindicted defendant on more serious charges), or where, over the government's objection, the court has granted the defendant's motion for a mistrial because of a hung jury, *see United States v. Motley,* 655 F.2d 186 (9th Cir.1981) (prosecutorial vindictiveness found where defendant reindicted on more serious charges). We, accordingly, express no opinion regarding the appropriateness of a presumption of prosecutorial vindictiveness in such circumstances.

Here, by contrast, since all agreed a mistrial was a necessity, the only event which might have served to spark a vindictive response by the prosecutor was the defendant's later rejection of the possibility of a plea and his demand that the retrial be by jury. We think it unrealistic to assume that the government's probable response to a defendant's choice to exercise his fundamental right to a trial would be to seek to penalize and deter, *Goodwin,* 458 U.S. at 381, 102 S.Ct. at 2492, even if that choice follows on the heels of a mistrial. *Accord United States v. Mays,* 738 F.2d 1188, 1190 (11th Cir.1984); *United States v. Ruppel,* 724 F.2d 507, 508 (5th Cir.1984); *cf. United States v. Lizza Industries, Inc.,* 775 F.2d 492, 495–96 (2d Cir.1985) (superseding indictment, which added perjury count based on defendant's testimony during first trial, after plea negotiations preceding second trial ended unsuccessfully, did not violate due process).

Having concluded that no presumption of vindictiveness arose here, we find it unnecessary to consider the government's additional argument that even if a presumption were proper here, the government has adequately rebutted that presumption.

### 2. *Sufficiency of the evidence.*

■ Khan challenges the sufficiency of the evidence supporting his convictions on counts 1, 3, 4, 5, 7, 9, and 16. The standards governing sufficiency claims are well settled and a defendant advancing such a claim carries a very heavy burden. *United States v. Young,* 745 F.2d 733, 762 (2d Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). In weighing Khan's claim, the relevant question is not whether this court believes that the evidence at trial established guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). Rather, the proper inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *"any* rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* Pieces of evidence must be viewed not in isolation but in conjunction, and the reviewing court must draw all favorable inferences and resolve all issues of credibility in favor of the prosecution. *Young,* 745 F.2d at 762.

Under these standards, Khan's attack fails because, after carefully reviewing the record, we conclude that there is sufficient evidence to support each of the challenged convictions.

### 3. *Expert testimony.*

Khan argues that the district court erred by permitting a DEA agent to give "irrelevant and unfairly prejudicial" expert testimony about heroin trafficking in Pakistan. The agent testified, over objection, that (1) heroin was extremely inexpensive in Pakistan; (2) it was common for Pakistani dealers to advance heroin to each other without immediate payment, deferring payment until the heroin could be sold; and (3) heroin dealers in Pakistan, like all Pakistanis, wore the same national dress—pantaloon, baggy pants, and a knee length top.

■ A trial judge has broad discretion in the matter of admission or exclusion of expert testimony under Fed.R.Evid. 702, and his actions will be sustained unless manifestly erroneous. *Young,* 745 F.2d at 760. Nevertheless, "[e]xpert evidence is not immune from the relevance requirement * * * [of Fed.R.Evid. 401] and must be excluded if irrelevant." *United States v. Torniero,* 735 F.2d 725, 730 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 788, 83 L.Ed.2d 782 (1985). Finally, even if relevant, expert evidence is subject to exclusion under Fed.R.Evid. 403 if the danger of unfair prejudice accompanying its introduction substantially outweighs its probative value. *Young,* 745 F.2d at 765 (Newman, J., concurring); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[02], at 702–11 to –12 (1985).

■ First, we note that the operations of narcotics dealers are a proper subject for expert testimony under Fed.R.Evid. 702. *United States v. Ginsberg,* 758 F.2d 823, 830 (2d Cir.1985). The agent's testimony—about the price of heroin in Pakistan, the practice of advancing heroin without cost, and even the nature of dress favored by Pakistani dealers—falls within this broad category.

■ Second, the evidence more than satisfies the minimal relevancy standards of Fed.R.Evid. 401 if for no other reason than the fact that Khan made the evidence relevant through his counsel's opening statement and trial strategy. Khan attempted to rebut the government's portrayal of him as a major drug dealer by suggesting that he was a poor man. For example, in his opening statement, Khan's counsel told the jury that they would not hear "that he's got cars and people driving them or anything that indicates what he could have possibly done with all of this money that he made over the years", and urged them to keep "a close ear as you hear the testimony: Where does it indicate, that if this man is as big as they say he is, where is the money?" This expert testimony was relevant to rebut Khan's arguments to the jury and show that (1) Khan did not need a large sum of money to deal in large amounts of heroin in Pakistan, and (2) even if Khan had made a great deal of money in the heroin trade, it would not necessarily show from the manner of his dress. *See United States v. Ruffin,* 575 F.2d 346, 356–57 (2d Cir.1978) (evidence relevant to rebut defense); *United States v. Levy,* 578 F.2d 896, 899 (2d Cir.1978) (same).

■ Finally, defendant contends that the trial judge should have excluded the evidence under Fed.R.Evid. 403 on the ground that its probative value was substantially outweighed by the danger of unfair prejudice, because it "subliminally appeal[ed] to guilt by association and potentially to prejudice against foreigners". This argument is frivolous. A district judge is afforded broad discretion in balancing these factors, and there is no showing that he acted "arbitrarily or irrationally" in overruling Khan's objection to the evidence. *United*

*States v. Moon,* 718 F.2d 1210, 1233 (2d Cir.1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984).

## CONCLUSION

The convictions are affirmed on all counts.