STATE of Wisconsin, Plaintiff-Respondent,†

v.

Hayes JOHNSON, Defendant-Appellant.

Court of Appeals

*No. 97–1360–CR. Submitted on briefs September 1, 1998.—Decided November 10, 1998.*

(Also reported in 588 N.W.2d 330.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Russell D. Bohach* of *Brennan & Collins*, of counsel, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Lara M. Herman*, assistant attorney general.

Before Fine, Schudson and Curley, JJ.

FINE, J. Hayes Johnson appeals from a judgment entered on a jury verdict convicting him of two counts of first-degree sexual assault of a child, *see* § 948.02(1), Stats., and from the order denying his motion for postconviction relief. He claims that the

trial court erred in rejecting his claim of prosecutorial vindictiveness and, therefore, denying his pretrial motion seeking dismissal of an amended information.[1] We reverse the trial court's order, and remand for further proceedings.

## I.

Johnson was charged originally with one count of first-degree sexual assault of a child in connection with an incident involving the five-year-old daughter of the woman with whom he was living. After Johnson rejected the prosecution's offer of a plea bargain, the case went to trial and the jury was unable to reach a verdict.[2] Before the case could be retried, the prosecu-

---

[1] " 'Prosecutorial vindictiveness' is a term of art with a precise and limited meaning. The term refers to a situation in which the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights." *United States v. Meyer*, 810 F.2d 1242,, 1245 (D.C. Cir. 1987) (applying presumption of vindictiveness in pretrial setting), *vacated*, 816 F.2d 695 (D.C. Cir. 1987) (*en banc*), *reinstated sub nom., Bartlett v. Bowen*, 824 F.2d 1240 (D.C. Cir. 1987) (*en banc*), *cert. denied sub nom., United States v. Meyer*, 485 U.S. 940.

[2] By letter dated the day before the final pretrial conference, the prosecutor wrote the following to Johnson's trial lawyer:

> If your client has any interest in resolving this matter short of trial, I would advise you that I would be willing to move to amend the charged offense of First Degree Sexual Assault of a Child, a 40 year felony, to Second Degree Sexual Assault of a Child, a 10 year felony; I will recommend a Presentence Report and recommend that the sentence have three components: that he serve a period of incarceration, the amount of which, and location of which, to be left to the Court; that he be required to participate in counseling and that he not be allowed to have contact with children under the age of 18. I'm willing to make this substantial reduction in his exposure

tor filed an amended information, which charged *two* counts of first-degree sexual assault of a child (both arising out of the same incident as the crime charged in the original information) and one count of burglary (entering the child's room with the intent to commit a felony—*see* § 943.10(1)(f), STATS.). By letter dated the day Johnson's second trial was to begin, the prosecutor repeated an offer she had discussed with Johnson's lawyer two days earlier:

> As you know, your client is currently charged with:
>
> **Two** counts of First Degree Sexual Assault of a Child
>
> One count of Burglary.
>
> He faces 90 years in prison; if your client wishes to reduce his exposure, the State makes the following offer:
>
> Plead guilty to only *one* count of First Degree Sexual Assault of a Child; the State will withdraw the Amended Information, thereby dismissing the second count of First Degree Sexual Assault of a Child and the Burglary.

and not make a specific recommendation regarding a prison sentence nor length thereof if this very young child is spared having to testify a second time about this matter. [The child testified at the preliminary examination.] You would be free to make whatever sentence recommendation you feel is appropriate. I have no objection if your client wishes to characterize his plea as an *Alford* one and it is my understanding that Judge [Maxine] White will accept such pleas.

The "*Alford*" plea to which the letter refers is one sanctioned by *North Carolina v. Alford*, 400 U.S. 25 (1970), where the defendant accepts conviction but maintains his or her innocence. *See State v. Garcia*, 192 Wis. 2d 845, 856, 532 N.W.2d 111, 115 (1995) (*Alford* pleas acceptable in Wisconsin).

(Underlining and bolding in original.) The letter said that the prosecutor was "willing to advise the Court that the State does not recommend the imposition of the maximum sentence and to leave the sentence to the Court."[3] It noted that Johnson's lawyer would be "free to argue for whatever sentence you feel is appropriate, including placement in a counselling program," and that the prosecutor would recommend that any sentence "run concurrent to [Johnson's] probation revocation time." The prosecutor's letter also expressed the "hope that these very young children, only 5 and 7, can be spared additional Court intrusions in their young lives," and threatened that "[i]f we cannot reach a resolution that spares these young children from the trauma of another round of testifying, and if [Johnson] is convicted of some or all of the charges, it is the State's intention to affirmatively and strongly recommend the imposition of a very lengthy prison sentence which will keep [Johnson] in prison for many decades."[4] The letter closed with a final entreaty to Johnson's lawyer: "If your client wants to take advantage of the opportunity

[3] The prosecutor's promise "to leave the sentence to the Court" is a curious but common phrasing of a prosecutor's promise not to make any sentencing recommendation. Sentencing is the trial judge's job, and is his or her responsibility alone—all a prosecutor or a defense attorney can do is to *recommend* a sentence. Phrasing it as the prosecutor did in this case, and as many prosecutors routinely do, can create a false impression that the prosecutor has legal authority to control the sentence imposed by the trial judge (beyond exercise of the prosecutor's charging discretion, which will, if the defendant is convicted, set the parameters of the possible lawful sentence).

[4] The seven-year-old child, a witness at the first trial, was the sister of the child whom Johnson was accused of assaulting. There is no allegation that Johnson assaulted the seven-year-old.

to be out of prison in a relatively short period of time, this offer is, in my judgment, his best bet to accomplish[ ] that objective."

The trial court denied Johnson's motion to dismiss the amended information, rejecting his contention that upping the ante following the mistrial was prosecutorial vindictiveness:

> The hung jury in this case and the mistrial that was declared [as a result of the jury's inability to agree on a verdict] basically puts us where we started, and clearly the prosecution would have the discretion to file additional charges in advance of trial, and that is where we find ourselves at this juncture, so there is no presumption of vindictiveness. There is no evidence of vindictiveness in the absence of a presumption in this case, and therefore, to the extent [Johnson's] motion [to dismiss the amended information] is based on this argument, it is also denied.

We review *de novo* the trial court's legal analysis as to whether a presumption of vindictiveness applies. *See United States v. Contreras*, 108 F.3d 1255, 1262 (10th Cir. 1997).

## II.

A prosecutor may not penalize a defendant in a criminal case for exercising a protected right. *United States v. Goodwin*, 457 U.S. 368, 372 (1982) ("For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right."); *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (due-process violation to punish person for doing

90

what the "law plainly allows"). Thus, for example, a prosecutor may not charge a defendant with a felony following the defendant's exercise of a statutory right to *de novo* review of a misdemeanor conviction, when both the misdemeanor conviction and the felony charge are based on the same conduct. *See Blackledge v. Perry*, 417 U.S. 21 (1974); *see also Thigpen v. Roberts*, 468 U.S. 27 (1984) (reaffirming vitality of *Perry*). The reason is clear: upping the ante in response to a defendant's exercise of rights will discourage all but "the most hardy defendants" from seeking redress, and persons are entitled to exercise their protected rights "without apprehension" that they will be punished as a result. *Perry*, 417 U.S. at 27–29. *Perry* explained:

> A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial de novo in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals—by "upping the ante" through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy—the State can insure that only the most hardy defendants will brave the hazards of a de novo trial.

417 U.S. at 27–28.

When a prosecutor takes action adverse to a criminal defendant following the defendant's exercise of his or her protected rights the law sometimes presumes that the adverse action was in retaliation for, and designed to prevent others from doing, what the defendant did. *Id.*, 417 U.S. at 28. This shifts to the

prosecutor the burden of proving that his or her decision to up the ante was unrelated to the defendant's exercise of a protected right. *Wasman v. United States*, 468 U.S. 559, 566, 569 (1984) (presumption of prosecutorial vindictiveness is rebutted by evidence proving "a legitimate nonvindictive justification for the greater charge"). Whether vindictiveness will be presumed generally turns on whether the defendant's exercise of his or her rights will force the "judicial system"—judges and prosecutors with the power to punish a defendant—to retry "issues that have already been decided." *Goodwin*, 457 U.S. at 376. This "institutional bias" "against the retrial of issues that have already been decided" creates a "realistic likelihood of 'vindictiveness' " that warrants use of the presumption. *Id.*, 457 U.S. at 376, 383–384; *Perry*, 417 U.S. at 27, 29 n.7.

In the pure pretrial setting, the "institutional bias" against retrying issues is not a consideration; at that point there is nothing to "retry." *Goodwin*, 457 U.S. at 377–378. Moreover, applying the presumption of vindictiveness in the pretrial context would unduly restrict appropriate prosecutorial discretion:

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized.

*Id.*, 457 U.S. at 381.[5] After the case has been tried once, however, the situation is different. Then, alert to the "institutional bias" against having to redo what was done once, the law will apply a presumption of prosecutorial vindictiveness to prevent the chilling of a defendant's rights. *See id.*, 457 U.S. at 383–384. As *Goodwin* explains:

> In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much

---

[5]*Bordenkircher v. Hayes*, 434 U.S. 357 (1978), shows the extent of deference that the federal courts give to prosecutors in the pretrial setting. The prosecutor in *Hayes* testified that he told Hayes that if Hayes pled guilty to passing an $88.30 bad check he would recommend that Hayes go to prison for five years. *Id.*, 434 U.S. at 358. If, however, Hayes rejected the prosecutor's demand to plead guilty and thus "save the court the inconvenience and necessity of a trial," the prosecutor said that he would go back to the grand jury and get an indictment that charged Hayes as a repeater; a conviction on this amended charge carried a mandatory life sentence. *Id.*, 434 U.S. at 358–359. Hayes insisted on exercising his constitutional right to trial, the prosecutor charged him as a repeater, and Hayes was convicted and was sentenced to the mandatory life term. *Id.*, 434 U.S. at 359. The United States Supreme Court, although recognizing that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort," nevertheless upheld Hayes's conviction, ruling that the prosecutor's actions were constitutionally permissible as part of the "give-and-take" of the plea-bargaining process. *Id.*, 434 U.S. at 363.

more likely to be improperly motivated than is a pretrial decision.

*Id.*, 457 U.S. at 381.

There are two hurdles that a defendant must clear in the post-trial setting before a court will apply a presumption of vindictiveness to a prosecutor's upping the ante in apparent response to the defendant's assertion of a protected right. First, the defendant must demonstrate that he or she did, in fact, exercise a protected right. Second, the circumstances must reveal a "realistic likelihood" that the prosecutor's response was designed to punish the defendant. *See id.*, 457 U.S. at 375, 384. If one of these hurdles is not cleared, the defendant cannot rely on a presumption of vindictiveness but may, of course, attempt to prove actual vindictiveness. *See id.*, 457 U.S. at 384.

A mistrial that results from a hung jury is not something over which a defendant has any control. *See United States v. Mays*, 738 F.2d 1188, 1190 (11th Cir. 1984) (*per curiam*) ("The mistrial follows as a matter of course from the jury's inability to agree upon a verdict."); *see also United States v. Khan*, 787 F.2d 28, 33 (2d Cir. 1986) (distinguishing mistrial granted because of the jury's inability to agree on a verdict with mistrial granted on defendant's request following error in conduct of trial); *United States v. Ruppel*, 666 F.2d 261, 267 (5th Cir. 1982) ("Unlike an attack upon a conviction, a mistrial resulting from a hung jury does not result from any action taken by a defendant."). The mistrial here was not the result of Johnson's assertion of a protected right. *See United States v. Contreras*, 108 F.3d 1255, 1263 (10th Cir. 1997); *United States v. Fiel*, 35 F.3d 997, 1007–1008 (4th Cir. 1994); *Khan*, 787 F.2d

at 33. Accordingly, the prosecutor would have been free to retry Johnson on the original charge without triggering any presumption of prosecutorial vindictiveness. Nevertheless, Johnson's right to a jury trial is protected by Article I, Section 7 of the Wisconsin Constitution.[6] Thus, although the grant of the mistrial was not the result of Johnson's exercise of a protected right, he exercised his protected jury-trial right by rejecting the prosecutor's demand that he accept conviction without trial, and thereby forced the "retrial of issues." *See Goodwin*, 457 U.S. at 476. As we have already seen, it is the "institutional bias" against having to redo trials that creates a "realistic likelihood of 'vindictiveness' " that warrants use of the presumption. *Id.*, 457 U.S. at 383–384; *Perry*, 417 U.S. at 27, 29 n.7. That, coupled with the prosecutor's addition of new charges and offer to withdraw the amended information if Johnson would accept conviction without a trial, has satisfied Johnson's burden to make a *prima facie* showing sufficient to trigger the presumption of prosecutorial vindictiveness.[7]

Presumptions in Wisconsin shift the burden of proof, RULE 903.01, STATS., and the State is entitled to an opportunity to prove "that the nonexistence of the

---

[6] Article I, Section 7 of the Wisconsin Constitution provides, as material here: "In all criminal prosecutions the accused shall enjoy the right . . . to a speedy public trial by an impartial jury."

[7] We leave for another day and another case the issue of whether a presumption of vindictiveness would apply in a situation where the prosecutor adds new charges without attempting to first use that as a threat to force a defendant to plead guilty or otherwise accept conviction without trial, such as where evidence presented or discovered during the first trial may warrant a prosecutor's exercise of discretion to add charges following a mistrial.

presumed fact"—prosecutorial vindictiveness—"is more probable than its existence."[8] *See Wasman*, 468 U.S. at 569–572. Whatever were the circumstances before the first trial, when "the prosecutor's assessment of the proper extent of the prosecution may not have been crystallized," *Goodwin*, 457 U.S. at 381, and when considerable deference is given to the plea-bargaining process, *see Hayes*, 434 U.S. at 362, once the case was ready for trial "it is much more likely that the State ha[d] discovered and assessed all of the information against [Johnson] and ha[d] made a determination, on the basis of that information, of the extent to which he should be prosecuted," *see Goodwin*, 457 U.S. at 381, including the plea-bargaining strategy that would be used in an attempt to persuade him to accept conviction without a trial. Significantly, the State does not dispute on this appeal Johnson's contention that the prosecutor did not learn anything new about this case after she filed the one-count information on which the first trial was based. In order to rebut the presumption of prosecutorial vindictiveness, the State will have to prove by a preponderance of the evidence (*see* RULE 903.01), that adding the two new charges was not done solely "to persuade the defendant to enter a guilty plea," *see United States v. Nichols*, 937 F.2d 1257, 1261 (7th Cir. 1991), *cert. denied*, 502 U.S.

---

[8] RULE 903.01, STATS., provides:

**Presumptions in general.** Except as provided by statute, a presumption recognized at common law or created by statute, including statutory provisions that certain basic facts are prima facie evidence of other facts, imposes on the party relying on the presumption the burden of proving the basic facts, but once the basic facts are found to exist the presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

1080, in order to relieve the prosecutor of having to redo what she had already done once.[9]

### III.

Based on the foregoing, the trial court's order denying Johnson's motion for postconviction relief is reversed, and the matter is remanded to the trial court for an evidentiary hearing. If the trial court determines that the State has not met its burden under RULE 903.01, STATS., it will have to consider the appropriate remedy. This remedy may be vacatur of Johnson's conviction on the second count of first-degree sexual assault of a child, leaving intact his conviction on the first count of first-degree sexual assault of a child if the evidence presented in connection with the second count and the burglary count would have been admissible at the trial under RULES 904.04(2) and 904.03, STATS., if Johnson had been retried on the first count only. *See*

---

[9] As we have seen, the prosecutor offered Johnson an opportunity to "be out of prison in a relatively short period of time" if he accepted the proffered plea bargain because, among other reasons, she wanted to "spare" the five-year-old and her seven-year-old sister "from the trauma of another round of testifying." We all have compassion for young victims of crime, especially sexual assault, and we agree that everything possible should be done to spare them additional trauma. Nevertheless, the Wisconsin Supreme Court has reminded us:

> [By not calling] the child as a witness, the district attorney may protect the child's emotional interest in not being forced to face the alleged abuser and accuse the abuser of criminal acts, but may inflict a greater harm on the child by allowing the alleged abuser to go free and by demonstrating to the child that the state of Wisconsin does not place a high enough value on the child's suffering to bring to justice the person alleged to have caused the suffering.

*State v. Gilbert*, 109 Wis. 2d 501, 507, 326 N.W.2d 744, 747 (1982).

*State v. Hall*, 103 Wis. 2d 125, 141–142, 307 N.W.2d 289, 296 (1981) (defendant not prejudiced by joinder if evidence of the allegedly improperly joined crime would have been admissible irrespective of the joinder).

*By the Court.*—Order reversed and cause remanded.