**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 30 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

GUSTAVO CASIAN ZARATE,

     Defendant-Appellant.

No. 98-3047
(D.C. No. 96-10022-03-MLB)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **MCWILLIAMS**, and **BALDOCK**, Circuit Judges.

Gustavo Zarate pleaded guilty to one count of conspiracy to distribute two kilograms of cocaine. He was sentenced to 120 months' imprisonment which included a two-level firearms enhancement. On appeal, he argues the enhancement was improper. Because the government met its minimal burden of showing possession, Mr. Zarate then was required to establish the weapon was not connected to the offense. He did not; therefore, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In January 1997, defendant Zarate and codefendants Rivera, Morales, and Guzman were arrested for the sale of two kilograms of cocaine to undercover DEA officers. The arrest occurred at a motel in Garden City, Kansas, and was the culmination of several months of undercover investigations and several drug transactions between the agents and the defendants. On January 30, the four defendants met the agents at the motel. Mr. Morales carried in the drugs and Messrs. Zarate, Guzman, and Rivera assisted in removing the wrapping. Defendant placed the package on a table in the room, and the agents cut it open to verify the contents were cocaine. Messrs. Zarate, Guzman, and Morales were then arrested in the motel room, and agents chased Mr. Rivera out the door and then arrested him.

After the arrests, the agents found 1,005.8 grams of cocaine on Morales. He was also in possession of an additional 3.2 grams of cocaine, 6.5 grams of cocaine base, and a loaded .380 caliber semi-automatic handgun. The agents discovered 994.3 grams of cocaine on Guzman who also had an additional 0.47 grams of cocaine, 4.9 grams of cocaine base, a chrome crack pipe, and a loaded .380 semi-automatic handgun.

Mr. Zarate argues he should not have received the enhancement under U.S.S.G. § 2D1.1(b)(1) ("If a dangerous weapon (including firearm) was possessed, increase by 2 levels") because *he* did not possess the firearm present in the drug trafficking; rather his codefendants did. The government counters the enhancement was appropriate because its proof of the firearms' proximity to the drug offense established possession. The burden

2

then shifted to Mr. Zarate to prove the firearm was not connected to the offense. Because he did not meet the burden, the government urges us to affirm the district court's decision to overrule defendant's objection. We review de novo the district court's application of the sentencing guidelines and review for clear error the district court's factual findings. *See United States v. Morales*, 108 F.3d 1213, 1225 (10th Cir. 1997).

We have held the enhancement for firearm possession during a drug offense should be applied if the firearm was present, unless it is clearly improbable that the firearm was connected with the offense. *See United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir. 1997) (citing U.S.S.G. § 2D1.1, comment n.3). The government bears the initial burden of proving possession by a preponderance of the evidence, and the burden may be satisfied by showing mere proximity to the offense. *See id.*; *United States v. Roederer*, 11 F.3d 973, 982-83 (10th Cir. 1993).

Mr. Zarate does not contest the handguns and cocaine were found together and in *United States v. Roberts*, 980 F.2d 645, 647 (10th Cir. 1992), we held a trial judge may "[e]nhance a drug defendant's sentence for mere possession of a dangerous weapon even if there is no evidence other than proximity to suggest the gun was connected to the offense." Therefore, in Mr. Zarate's case, "this proximity to the offense is enough to establish the appropriateness of the enhancement." *Smith*, 131 F.3d at 1400.

As district court ruled, once the government showed the firearm to be proximate to the offense, the burden shifted to Mr. Zarate to prove it clearly improbable the weapon

3

was connected to the offense. *See id.* He made no such showing, instead, claiming the enhancement was inappropriate because his co-defendants possessed the firearms, and he did not. In *Smith*, the defendant similarly tried to deflect his burden of proving it clearly improbable the weapon was connected with the offense by claiming he did not possess any of the weapons which all belonged to his co-defendants. We rejected that argument because "personal possession of a firearm … is not necessary," and the sentencing court may "attribute to a defendant weapons possessed by his codefendants if the possession of the weapons was known to the defendant or reasonably foreseeable to him." *Id*.

In *Smith*, the defendant was arrested at a methamphetamine house. He was convicted of distribution of methamphetamine and his sentence was enhanced under U.S.S.G. § 2D1.1(b)(1). Testimonial evidence revealed the defendant's involvement in codefendants' drug operation, and that he lived and worked at the house where police located the firearms, drugs and paraphernalia. The firearms seized included a loaded semiautomatic firearm found in the garage near the entrance to the drug lab and other firearms found in the house. The defendant's fingerprints were not found on any firearm and none was registered to him. *See id.* We held the district court did not make clearly erroneous findings the defendant reasonably foresaw his codefendants' possession of firearms and the firearms were used to protect the drugs and the methamphetamine lab. *See id.*

4

Similarly, in Mr. Zarate's case, he was arrested at the scene of the drug offense where the firearms were also found. Undercover agents who had been dealing with the defendant before his arrest testified to possession. In the agents' opinion, Mr. Zarate organized the January 30 cocaine transaction, negotiated with others to consummate the deal, and "needed the assistance of others as far as counter surveillance and security and possibly assisting him in providing that quantity [of cocaine]." An investigative report indicated that prior to meeting at the motel, Mr. Zarate met with Messrs. Guzman and Morales at the El Palanque Club, and the government states "while it is not known what exactly took place at this meeting … [i]t is reasonable to assume that Zarate had discussions with Guzman and Morales concerning their 'roles' in the transactions and the fact that they had weapons."

Under our case law this evidence suffices to support the district court's finding of reasonable foreseeability. *See id. (citing **United States v. McFarlane**, 933 F.2d 898, 899 (10th Cir. 1991) (Provisions of U.S.S.G. § 2D1.1(b)(1) and 1B1.3(a)(1)[1] "together … permit sentencing courts to attribute to a defendant weapons possessed by his codefendants if the possession of weapons was known to the defendant or reasonably foreseeable by him"); *see also **United States v. Garza**, 118 F.3d 278, 285-86 (5th Cir. 1997) ("[A] district court may ordinarily infer that a defendant should have foreseen a

---

[1] U.S.S.G. § 1B1.3(a)(1) directs courts applying a specific offense characteristic such as 2D1.1(b)(1) to consider "all acts and omissions committed or aided and abetted by the defendant … that occurred during the commission of the offense."

codefendant's possession of a dangerous weapon, such as a firearm, if the government demonstrates that another participant knowingly possessed a weapon while he and the defendant committed the offense.")

The government established possession by both proximity and reasonable foreseeability.  As the district court found, Mr. Zarate did not then go forward and meet his burden of showing the weapon was unconnected to the offense.  Therefore, the district court did not clearly err in enhancing the sentence.  The judgment of the district court is **AFFIRMED**.


                                        ENTERED FOR THE COURT

                                        John C. Porfilio
                                        Circuit Judge