**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 31 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

HUGHIE CASTER,

Defendant-Appellant.

No. 01-8039
(D.C. No. 00-CR-171-B)
(D. Wyo.)

**ORDER AND JUDGMENT** *

Before **TACHA** , Chief Judge, **BALDOCK** , Circuit Judge, and **BRORBY** , Senior Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant Hughie Caster pleaded guilty to conspiracy to possess methamphetamine with intent to distribute it, a violation of 21 U.S.C. §§ 846 and

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

841(a)(1). The district court sentenced him to 210 months in prison. He appeals that sentence, alleging that the court erroneously imposed three separate sentence enhancements. With one exception discussed below–the enhancement he received for his "use of a minor" in aid of a drug conspiracy–Caster does not challenge the district court's interpretation of the sentencing guidelines. He challenges instead the factual findings underlying the court's application of the relevant guidelines.

We review the sentencing court's factual findings for clear error. *United States v. Morales*, 108 F.3d 1213, 1225 (10th Cir. 1997). To constitute clear error, we must be convinced that the sentencing court's findings are not plausible or permissible in view of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district court. *Id.* Moreover, we view the evidence underlying a sentence in the light most favorable to the district court's decision. *See United States v. Conley*, 131 F.3d 1387, 1389 (10th Cir. 1997).

## I. DRUG QUANTITY

Caster first challenges the district court's finding that his drug activities accounted for more than five kilograms of methamphetamine. The district court's drug quantity finding rested largely on the testimony of the probation officer who prepared Caster's presentence report. The probation officer's testimony in turn largely relied on out-of-court statements by Caster's co-conspirators, who told

investigators about large amounts of methamphetamine distributed to and by Caster. All tolled, the probation officer estimated that 5.05 kilograms of methamphetamine could be attributable to Caster, a conclusion the probation officer stated was based on conservative estimates. Renewing objections he made to the presentence report, Caster questions the credibility of one of his co-conspirators, Zachary Hye, and urges us to exclude altogether several other transactions apart from those involving Hye.

The sentencing court, as the fact finder, has the duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts." *See United States v. Nieto*, 60 F.3d 1464, 1469 (10th Cir. 1995) (quotation omitted). Credibility determinations are left to its sound discretion. *See United States v. Gobey*, 12 F.3d 964, 967 (10th Cir. 1993). Moreover, the sentencing guidelines authorize the admission of out-of-court statements at a sentencing hearing, so long as they have "sufficient indicia of reliability to support [their] probable accuracy." U.S. Sentencing Guidelines Manual § 6A1.3(a). Similarly, when evaluating the quantity of drugs for which a defendant may be held accountable under the guidelines, a district court may rely on factually supported estimates. *United States v. Richards*, 27 F.3d 465, 469 (10th Cir. 1994).

Here the district court was forced to resolve conflicting accounts about drug quantity and to assess the credibility of Caster and his various co-conspirators. At his plea hearing, for instance, Caster admitted to distributing only seven pounds of methamphetamine, an amount less than five kilograms. Yet Hye told the probation officer of his almost daily one-ounce purchases from Caster, purchases that by themselves totaled just short of five kilograms. When these purchases are added to additional transactions between Caster and his other co-conspirators, the total figure, according to the testimony of the probation officer, is 5.05 kilograms. Unable to substitute our judgment for that of the sentencing court, and viewing the evidence in a light most favorable to the court's decision, we cannot say that its drug quantity finding was implausible or clearly erroneous. Hence there was no abuse of discretion.

## II. USE OF A MINOR

Caster next objects to the sentence enhancement he received for using a minor to advance his drug sales. The sentencing guidelines prescribe a two-level increase "if the defendant used or attempted to use a person less than eighteen years of age to commit the offense . . . ." U.S. Sentencing Guidelines Manual § 3B1.4. This enhancement applies only if the defendant directs, trains, or in some other way affirmatively engages the minor participant in the crime of conviction. *Id.*, cmt. n.1. The evidence must show more than the mere fact that

the defendant was involved in a drug conspiracy with a minor. *See United States v. Suitor*, 253 F.3d 1206, 1210 (10th Cir. 2001).

According to the presentence report, Caster arranged a sale of a quarter pound of methamphetamine between sixteen-year-old Jesus Lopez and Zachary Hye; Hye immediately gave more than an ounce of the drug to Caster. Later, again according to the presentence report, Caster "fronted" or sold on credit an ounce and a half of methamphetamine to Lopez, who then sold it in smaller quantities with the intent to pay Caster with the proceeds generated from those sales. In other words, Caster helped orchestrate one large methamphetamine sale by a minor and later served as that minor's drug wholesaler. Based on this evidence, we have no difficultly concluding that there is a sufficient basis to sustain the district court's finding that Caster "used" a minor as that term is defined in § 3B1.4.

Nonetheless, Caster claims that even if we accept the facts supporting the use-of-a-minor enhancement, they are legally insufficient to constitute the "use" of a minor, since "[n]o money ever exchanged hands." Aplt.'s Br. at 14. We disagree.[1] The amount of methamphetamine Caster fronted Lopez, more than an

---

[1] This is the one legal argument Caster offers. We review it de novo. *See United States v. Morales*, 108 F.3d 1213, 1225 (10th Cir. 1997) (stating that this court reviews the district court's application of the sentencing guidelines de novo).

ounce, lends itself to the obvious inference not only that Caster believed that the methamphetamine would be sold but also that he would profit from its sale. It was not a gift; it was a business transaction.

### III. POSSESSION OF A FIREARM

The final enhancement Caster challenges is the two-level increase he received because "a dangerous weapon . . . was possessed" during the drug conspiracy. U.S. Sentencing Guidelines Manual § 2D1.1(b)(1). Insisting that the government did not adequately link him to two guns discovered at a house he owned, Caster argues that the district court erroneously imposed the firearm enhancement on him. He rests heavily on the fact that he was not arrested at the house where the guns were discovered. This point is all but irrelevant.

Caster was arrested at a friend's residence; he had been hiding there to avoid outstanding warrants. The guns were seized from Caster's house, discovered in his bedroom along with drug scales, packaging materials, and pay/owe sheets. The presentence report and the probation officer who prepared it described the bedroom where the guns were found as a "stash room." *See* Presentence Report at para. 16. The source of this information, co-conspirator Hye, confirmed that he had seen Caster with the guns. Caster offered nothing to undermine the government's evidence. We conclude that the government has met its burden to warrant the gun enhancement.

The judgment of the United States District Court for the District of Wyoming is AFFIRMED.

Entered for the Court


Wade Brorby
Senior Circuit Judge