**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Solomon ISRAEL, Defendant.**

**Case No. CR–3–99–093.**

United States District Court,
S.D. Ohio,
Western Division.

Feb. 11, 2003.

ENTRY OVERRULING DEFENDANT'S MOTIONS FOR NEW TRIAL (DOCS. ## 33, 34, 35 AND 56); DECISION AND ENTRY RULING UPON DEFENDANT'S OBJECTIONS TO PRE–SENTENCE REPORT (DOC. # 56); DECISION AND ENTRY OVERRULING DEFENDANT'S REQUEST TO BE SENTENCED IN ACCORDANCE WITH *UNITED STATES V. MORALES*, 108 F.3d 1213 (10TH CIR. 1997); DECISION AND ENTRY OVERRULING DEFENDANT'S SUPPLEMENTAL, *PRO SE* OBJECTIONS TO THE PRE–SENTENCE REPORT (DOC. # 82)

RICE, Chief Judge.

During a hearing conducted on March 8, 2002, the Court overruled Defendant's Motions for New Trial (Docs. ## 33, 34, 35 and 56). *See* Transcript of March 8, 2002

Hearing (Doc. # 83) at 97–107. Herein, the Court supplements its reasoning for those decisions in written form. The Court begins its analysis, by reviewing the standards which are applicable to all motions in which a defendant seeks a new trial on the basis of newly discovered evidence.

A request for new trial on the basis of newly discovered evidence is governed by Rule 33 of the Federal Rules of Criminal Procedure. In *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983), the Sixth Circuit established a test under which "a new trial motion will be granted based on newly discovered evidence only if the defendant can prove that the evidence was: (1) discovered only after trial; (2) could not have been discovered earlier with due diligence; (3) is material and not merely cumulative or impeaching; and (4) would likely produce an acquittal if the case were retried." *United States v. Willis*, 257 F.3d 636, 642 (6th Cir.2001).

The Defendant has presented three types of newly discovered evidence, to wit: 1) testimony by Patrick Mulligan ("Mulligan") to the effect that Dennis Hunter ("Hunter") had told him, subsequent to May 27, 1994, that he (Hunter) had recently earned $150,000 gambling with loaded dice; 2) testimony by Arvin Ridley ("Ridley") that Hunter had told him that he cheated someone out of $20,000, using loaded dice; and 3) the testimony of Keith DeWitt, Sr. ("DeWitt"), concerning the allegation that the Government withheld a tape of a recorded conversation between the Defendant and Charles Walker ("Walker"), a Government witness. As a means of analysis, the Court will initially discuss the first two types of evidence, following which it will turn to the third.

 Mulligan testified about his conversation with Hunter, during which Hunter

indicated that he had recently earned $150,000 gambling with loaded dice. In addition, Ridley testified that Hunter told him that he had cheated people out of $20,000, using loaded dice. According to Defendant, he would have attempted to use this information at trial, to demonstrate that Hunter was a gambler, rather than being a drug dealer, thus casting doubt on Defendant's conviction on Counts 1–4, all of which arise out of his relationship with Hunter, the drug dealer. The Defendant's request for a new trial on the basis of evidence which would prove that Hunter was a gambler fails the second-prong of the Sixth Circuit's four-part test. During his cross-examination of Hunter, Defendant questioned him on his activities as a gambler. Thus, it is apparent that the Defendant knew of Hunter's gambling prior to trial. Moreover, the Defendant knew of and had access to both Mulligan and Ridley before his trial.[1] Consequently, the Court does not believe that the Defendant can establish that he could not have discovered Ridley's and Mulligan's statements about Hunter's gambling prior to trial.

 Walker made a trip to Dayton with the Defendant in September, 1997. DeWitt testified that the Government provided Robert Maston with a transcript of a tape recording, made with a body wire Walker had worn when he was with the Defendant during that trip. During the trial, Walker and the agent handling him testified that no tape recordings were made of Walker's conversations with the Defendant. According to the Government, such tape recordings, even if they exist, would be entirely irrelevant, since Walker's testimony related solely to Counts 5 and 6 of the Indictment, and the Defendant was acquitted of those offenses. The Defendant has not challenged the Government's assertion that Walker's testimony related solely to Counts 5 and 6. Since Walker's testimony related solely to the counts on which Defendant was found not guilty, the failure to provide tape recordings of conversations between Walker and the Defendant, assuming such tape recordings exist, is both harmless and moot.[2]

1. During the trial, the Defendant attempted to play a tape recording of a conversation between Mulligan and his client Robert Yates, on one hand, and Charles Walker, on the other, thus indicating that the Defendant was aware of Mulligan and had access to him during his trial. Defendant also knew of and had access to Ridley before trial, given that the two were long-time friends. Indeed, Ridley testified for the Government during Defendant's trial.

2. The Defendant also seeks a new trial under the theory that the Government withheld exculpatory evidence. In particular, the Defendant accuses the Government of withholding three pairs of loaded dice and a tape recording of a conversation involving Hunter, during which he is alleged to have made a statement soliciting violence against another person. The Government has argued persuasively that, prior to trial, it identified both the tape recording and the loaded dice as evidence which Defendant's counsel could inspect. That argument is supported by the evidence submitted by the Government during the evidentiary hearing on Defendant's requests for a new trial. *See* Doc. # 58. The Sixth Circuit has said that "[n]o *Brady* violation exists where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information.' " *United States v. Clark*, 928 F.2d 733, 738 (6th Cir.), *cert. denied*, 502 U.S. 846, 112 S.Ct. 144, 116 L.Ed.2d 110 (1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2nd Cir.1988), *cert. denied*, 488 U.S. 1040, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989)). *See also, United States v. Mullins*, 22 F.3d 1365, 1371–72 (6th Cir. 1994); *United States v. Todd*, 920 F.2d 399, 405 (6th Cir.1990). Herein, even if the Government did not provide a copy of the tape recording or the actual dice to the Defendant, it offered to make them available for inspection; therefore, a *Brady* violation did not occur.

With one of his motions requesting a new trial, the Defendant challenged the venue of this Court over the offenses set forth in Counts 1–4. Under Rule 33 of the Federal Rules of Criminal Procedure, a motion for new trial, on any ground other than newly discovered evidence, must be filed within seven days of return of the guilty verdict. That temporal requirement is jurisdictional. *See e.g., United States v. Diaz,* 300 F.3d 66, 78 (1st Cir.2002); *United States v. Emuegbunam,* 268 F.3d 377, 397 (6th Cir.2001), *cert. denied,* 535 U.S. 977, 122 S.Ct. 1450, 152 L.Ed.2d 392 (2002). Herein, the jury returned its verdicts finding the Defendant guilty of the offenses charged in Counts 1–4 on December 31, 1999. Since the Defendant did not file his motion seeking a new trial on the basis of improper venue until August 18, 2000, this Court is without jurisdiction to address that motion.

Accordingly, the Court overrules the Defendant's Motions for New Trial (Docs. ## 33, 34, 35 and 56).

During the hearing of March 8, 2002, the Court indicated that it would not sustain any of the Defendant's Objections to the Pre–Sentence Report (Doc. # 56). *See* Doc. # 83 at 146. Thus, the Court said that it would either overrule those objections or the objected-to portions of the Pre–Sentence Report ("PSR") would not be considered when sentence was imposed. *Id.* However, upon further reflection, the Court sustains two of the Defendant's objections. Herein, the Court sets forth its reasons for its ruling during the March 8th Hearing, as well as for sustaining, upon reflection, two of the Defendant's objections.

■ In *United States v. Carr,* 5 F.3d 986 (6th Cir.1993), the Sixth Circuit wrote:

> Finally, Carr objects to the district court's treatment of his objections to the presentence report. The court concluded that the objections

are merely an attempt to retry the case already decided adversely to the Defendants by the jury[. T]he Court, having presided over the jury trial and having considered the testimony adduced therein in preparation for sentencing, will place the designation "overruled; attempt to retry jury trial" next to the designation of the objection.

The court specifically responded to the "objection to a 4 point enhancement for the Defendant as an organizer or leader of a criminal activity that involved 5 or more participants or was otherwise extensive[,]" as follows:

> Overruled; the evidence adduced at trial proves beyond any and all reasonable doubt the Defendant's entitlement to such an enhancement. The Defendant's objection is an attempt to retry the jury trial.

Carr argues that the district court was required to make an explicit finding that he had control over four other persons in the offense, and more generally, that the type of conclusion made by the district court in response to all his objections was too cursory, and fails to comply with the mandate of Fed.R.Crim.P. 32(c)(3)(D). We note that Rule 32(c)(3)(D) provides:

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.

In resentencing the defendant, the district court should make a finding of fact

with respect to any objection the defendant makes to the presentence report, and identify the basis for such finding. *Id.* at 995. In *United States v. Monus,* 128 F.3d 376 (6th Cir.1997), *cert. denied,* 525 U.S. 823, 119 S.Ct. 67, 142 L.Ed.2d 53 (1998), the Sixth Circuit discussed the requirements of Rule 32(c)(1) of the Federal Rules of Criminal Procedure, the successor to Rule 32(c)(3)(D), the provision at issue in *Carr:* [3]

Rule 32(c)(1) requires courts, at the sentencing hearing, to make either a factual finding for each contested factor of the PSI, or to make "a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." Fed. R.Crim. P. 32(c)(1). "This circuit requires 'literal compliance' with this provision," because such factual findings help "to ensure that defendants are sentenced on the basis of accurate information and provide [ ] a clear record for appellate courts, prison officials and administrative agencies who may later be involved in the case." *United States v. Tackett,* 113 F.3d 603, 613–14 (6th Cir.1997) (quoting *United States v. Fry,* 831 F.2d 664, 667 (6th Cir.1987)). The law in this circuit clearly prohibits a court faced with a dispute over sentencing factors from adopting the factual findings of the presentence report without making factual determinations of its own. See, e.g., *Tackett,* 113 F.3d at 613–14; *United States v. Edgecomb,* 910 F.2d 1309, 1313 (6th Cir. 1990) ("If a district court fails to make a factual finding, this court must remand for resentencing."); *United States v. Mandell,* 905 F.2d 970, 974–75 (6th Cir. 1990). In *Tackett,* this court reviewed a

sentence imposed by a district court that was "completely silent" on contested issues, and merely stated that it adopted "the factual findings and guideline applications in the presentence report." *Id.* at 614. In *Mandell,* we decided that a district court violated Rule 32 when it accepted a pre-sentence report's recommended sentencing level without making any findings of fact on disputed issues. 905 F.2d at 974. *Edgecomb* presented a similar situation in which a district court failed to respond at all to objections to a pre-sentence report. 910 F.2d 1309.

*Id.* at 996 (footnote omitted). The burden of proof in sentencing is proof by the preponderance of the evidence, rather than proof beyond a reasonable doubt. *United States v. Keszthelyi,* 308 F.3d 557, 576 (6th Cir.2002) With those standards in mind, the Court turns to the Defendant's Objections to the PSR, addressing them in the order in which they were presented.

■ 1. The Defendant objects to ¶ 9 of the PSR, arguing that it is untrue. In that paragraph, the probation officer sets forth the background of the charged conspiracy. In particular, the probation officer states that law enforcement officers investigated drug trafficking involving Hunter, Ronniell Jones ("Jones") and others between January, 1991, and October, 1999. The Defendant argues that his name did not come up in the investigation until much later. He also objects to the assertion that he was involved in a conspiracy with the Hunter group between those dates. The Court need not resolve this objection, "because the controverted matter will not be taken into account in, or will not affect, sentencing." Simply stated, information concerning the background of the conspiracy, the date upon which law enforcement began to investigate the Defendant or when he be-

---

**3:** In *Monus,* the Sixth Circuit noted that Rule 32(c)(1) was identical to Rule 32(c)(3)(D).

128 F.3d at 396 n. 11.

came involved with Hunter and his associates will not affect sentencing. The Defendant will be sentenced based only upon his specific involvement in the conspiracy, as brought out at trial.

2. The Defendant objects to ¶ 10 of the PSR, wherein the probation officer indicates that the Defendant told Hunter that he could conceal drug proceeds by reinvesting them in his company, S & S Trading Post, Inc. ("S & S Trading Post"). The Defendant contends that the Government failed to prove at trial that he had any knowledge that Hunter and his associates obtained funds from drug trafficking. The Defendant also disputes that the purpose of his transactions with Hunter was to provide him an ostensibly legitimate source of income. According to the Defendant, Hunter merely wanted to invest $8,500, which he had obtained legitimately. The evidence presented at trial established, by the preponderance or greater weight of the evidence, and the Court so finds, that Defendant told Hunter that he could conceal drug proceeds by investing them in the S & S Trading Post, that Defendant knew Hunter was investing drug proceeds in the S & S Trading Post and that the purpose of those transactions was to provide Hunter with a seemingly legitimate source of income. Accordingly, the Court overrules the Defendant's objection to ¶ 10 of the PSR.

3. The Defendant objects to ¶ 11, wherein the probation officer states that Hunter gave Defendant $190,000 of drug proceeds to launder. The Defendant argues that the assertions in this paragraph are unsupported by the evidence at trial. This Court cannot agree. The evidence presented at trial established, by the preponderance of the evidence, and the Court so finds, that Hunter gave the Defendant $190,000 to launder and that said sum represented proceeds from the distribution of cocaine. Accordingly, the Court over-

rules the Defendant's objection to ¶ 11 of the PSR.

4. The Defendant objects to ¶ 12 of the PSR, which indicates that the nearly $1 million seized from Hunter and Jones is the money that the Defendant helped count and offered to launder trough S & S Trading Post. The Defendant contends that the proof did not establish that Hunter ever indicated that he wanted to launder money through the S & S Trading Post; he merely wanted to invest money in the Defendant's entity. This Court cannot agree. The evidence introduced at trial established, by the preponderance of the evidence, and the Court so finds, that the Defendant's relationship with Hunter involved laundering drug proceeds, rather than a desire on the part of Hunter to invest lawfully obtained funds in Defendant's business. Accordingly, the Court overrules this objection.

5. Defendant objects to ¶ 13 of the PSR, wherein the probation officer states, *inter alia*, that the Defendant knew that one source of Hunter's income was illegal trafficking in cocaine. The Defendant argues that the Government failed to prove that cocaine trafficking was the source of Hunter's income. This Court cannot agree. Rather, the evidence introduced at trial established, by the preponderance of the evidence, and the Court so finds, that the Defendant knew that a source of Hunter's income was cocaine trafficking. Consequently, the Court overrules Defendant's objection to ¶ 13.

6. Defendant objects to ¶ 16 of the PSR, which indicated the probation officer's opinion that he was unlikely to make a statement accepting his responsibility. The Defendant objects to the failure of the probation officer to interview him. Subsequently, the probation officer interviewed the Defendant and he admitted soliciting an investment from Hunter, but denied knowing that the money Hunter was in-

vesting was drug proceeds. Given the fact that the probation officer interviewed the Defendant, this objection is moot. Consequently, the Court need not resolve this objection, "because the controverted matter will not be taken into account in, or will not affect, sentencing."

7. The Defendant indicates that he is objecting to ¶ 17 of the PSR, wherein the probation officer states that the 1998 edition of the Sentencing Guidelines has been used. However, rather than a challenge to ¶ 17, this objection seems to be a preface to what will follow. He points out that there is no evidence that he was actually involved in the distribution of drugs (the PSR does not assert that he was). He also points out that the Court must find the amount of money he laundered (money is the substitute for drugs in this case). Since the current edition of the Sentencing Guidelines is not more favorable than the 1998 version,[4] and, further, given that the Defendant has not challenged the applicability of the 1998 edition, the Court overrules that objection.

8. The Defendant objects to ¶ 25 of the PSR, wherein the probation officer indicates that the Defendant is responsible for $1,168,700 in money laundered. That figure is comprised of $190,000 which Hunter gave the Defendant to invest in S & S Trading Post, $551,700 seized from Hunter's residence and $427,000 which was seized from Jones' residence. The probation officer converted that sum to 48.69 kilograms of cocaine, which leads to a base offense level of 34. The Defendant challenges the base offense level, essentially incorporating his previous arguments that the Government failed to prove that he laundered money, since it failed to prove that he knew that Hunter and his associates were involved in drug trafficking. The Court rejects that argument. Rather, the evidence introduced at trial established, by the preponderance of the evidence, and the Court so finds, that Defendant knew that Hunter and his associates were involved in drug trafficking.

In addition, the Defendant argues that, at most, he should be responsible for only $190,000 in laundered funds and points out that if the $190,000 were converted to cocaine, the base offense level would be 32. Therefore, this objection can also be interpreted as an argument that the PSR should have recommended a base offense level of 32, rather than of one of 34.

As an initial matter, the evidence introduced at trial established, by the preponderance of the evidence, and the Court so finds, that the Defendant is responsible for $190,000, which Hunter gave to him to invest in S & S Trading Post. The evidence established that this sum was generated from Hunter's cocaine distribution conspiracy and that the Defendant knew the source of those funds. In addition, the Court agrees with the Defendant that, if he is responsible for only the $190,000, his base offense level would be 32, rather than 34.[5] The Court now turns to the question of whether the Government has met its

---

4. Defendant points out that amendments have made the Sentencing Guidelines for money laundering more favorable. Since the Defendant will not be sentenced in accordance with the Sentencing Guidelines for money laundering, the fact that amendments have made them more favorable will not impact his sentence. In addition, § 2D1.1, the Guideline under which the Defendant's sentence will be computed, has been amended to provide that the base offense level for a defendant who receives a reduction as a result of his role in the offense cannot exceed 30. Herein, the Defendant will not receive such a reduction; therefore, the amendment does not affect his sentence.

5. The probation officer converted the $1,168,700 into 48.69 kilograms of cocaine, resulting in a conversion rate of approximately $24,000 per kilogram. The Court adopts that conversion figure, since neither party has

burden of proving, by the preponderance of the evidence, that *all* of the money which Defendant helped Hunter count ($1.1 million) is relevant conduct under § 1B1.3 of the Sentencing Guidelines. *See United States v. Moreno,* 933 F.2d 362, 374 (6th Cir.1991).

Section 1B1.3 provides, in pertinent part:

(a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense....

In applying § 1B1.3 in drug conspiracy cases, the Sixth Circuit has indicated that the District Court must ascertain "the amount of drugs directly attributable to the defendant and 'all reasonably foreseeable acts and omissions of others in fur-

therance of the' conspiracy." *United States v. Gaitan–Acevedo,* 148 F.3d 577 (6th Cir.) (quoting U.S.S.G. § 1B1.3(a)(1)(B)), *cert. denied,* 525 U.S. 912, 119 S.Ct. 256, 142 L.Ed.2d 210 (1998). Of course, herein, the Court considers the amount of money which is directly attributable to the Defendant, since he acted as a money launderer, rather than being involved in the distribution of cocaine.

Hunter testified that, in early September, 1996, he enlisted the Defendant's assistance to count approximately $1.1 million in currency, which represented profits Hunter had previously earned from his cocaine distribution activities. Transcript of December 16, 1999, Proceedings (Doc. # 24) at 65. Hunter gave the Defendant about $105,000 of that sum as part of his $190,000 investment in S & S Trading Post. *Id.* at 67. Hunter and the Defendant also discussed the manner in which the remainder of the $1.1 could be concealed. *Id.* Although the Defendant suggested that Hunter could conceal the remainder of the currency in Detroit (*Id.*), Hunter rejected the Defendant's suggestion and attempted to hide the money in the oven at his residence and at Jones' residence. *Id.* at 67–68. Approximately three weeks later, officers executed search warrants at those locations, during which $551,700 was seized from Hunter's residence and $427,000 from that of Jones. *Id.* at 69–71. Thus, the evidence established that Defendant merely assisted Hunter in counting a large amount of currency. There is no evidence that the Defendant helped Hunter generate those funds through the distribution of cocaine; nor did he help Hunter attempt to conceal those funds, by laundering them.[6] Although Defendant suggested

---

objected to it. Dividing $190,000 by $24,000 per kilogram results in a quotient of nearly 8 kilograms, well within the base offense of 32 range of 5 to 15 kilograms. *See* U.S.S.G. § 2D1.1(c)(4).

6. Hunter did give the Defendant $105,000 of the currency which they had counted. That amount of currency is part of the $190,000 that Hunter invested in S & S Trading Post.

that the currency could be concealed in Detroit, Hunter rejected that solution and hid it in his and Jones' residences, where it was seized by law enforcement officials about three weeks later. Thus, there is no evidence that Defendant laundered or otherwise concealed the currency which he and Hunter counted (other than the $105,000 which is part of the $190,000 that Hunter invested in S & S Trading Post and for which Defendant is responsible).

■ Additionally, the Government suggests that the base offense level could exceed 34, particularly if one considers the offenses for which the Defendant was acquitted. According to the Government, those offenses constitute "relevant conduct" under the sentencing guidelines. The Court cannot agree. In *United States v. Gilbert*, 173 F.3d 974 (6th Cir.), *cert. denied*, 528 U.S. 856, 120 S.Ct. 140, 145 L.Ed.2d 119 (1999), the Sixth Circuit discussed when one offense can be considered relevant conduct of an offense for which a person was convicted:

> Relevant conduct encompasses acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) (1995). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3, comment. (n.9) (1995). Even if not part of a common scheme or plan, prior actions constitute part of the same course of conduct "if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* In applying this guideline the courts should consider "the degree of similarity of the offenses, the regularity (repetitions) of

the offenses, and the time interval between the offenses." *Id.*

*id.* at 977. Herein, the Defendant was acquitted of offenses set forth in Counts 5 and 6, relating to his trip to Dayton to attempt to obtain drug money which had belonged to a deceased drug dealer. The offenses for which the Defendant was convicted relate to a cocaine distribution conspiracy with Hunter and his associates, in which Defendant played the role of money launderer. The evidence relating to Counts 5 and 6 was that the Defendant, after learning that a Dayton drug dealer had died, leaving a significant amount of cash, traveled to Dayton in an effort to steal that money. There was simply no evidence that the drug distribution conspiracy for which Defendant was convicted was connected to Counts 5 and 6 by a common factor, such as common victims, common accomplices, a common purpose or similar modus operandi. Consequently, the offenses were not part of a common plan or scheme. Moreover, Counts 1–4 are not sufficiently connected or related to Counts 5 and 6 to lead to the conclusion that they are all part of a single episode or spree or ongoing series of offenses. The Defendant was convicted of Counts 1–4 for his participation as a money launderer in Hunter's cocaine distribution conspiracy. Counts 5 and 6, in contrast, arose out of the Defendant's attempts to steal money from a deceased drug dealer about two years later. Therefore, the Court concludes that, in accordance with *Gilbert,* the offenses charged in Counts 5 and 6 do not constitute relevant conduct for Counts 1–4.

■ In sum, the Defendant did not generate the approximately $1.1 million that he and Hunter counted in early September, 1996, nor did he conceal or launder that money, other than the $105,000 which was part of Hunter's $190,000 investment in S & S Trading Post and for which the

Defendant is responsible. Rather, the Defendant merely helped count that money. Moreover, there was no evidence that the act of counting the money assisted the conspiracy. Therefore, that sum does not constitute relevant conduct for purposes of calculating the Defendant's sentence.[7] In addition, the Court has rejected the Government's assertion that the Defendant's actions underlying Counts 5 and 6 constitute relevant conduct. Accordingly, the Court sustains Defendant's objections to the PSR, to the extent that he objects to ¶ 25, because it recommends a base offense level of 34, rather than one of 32. The Court will sentence Defendant in accordance with a base offense level of 32.

9. The Defendant objects to ¶¶ 26–27 of the PSR, wherein the probation officer says that the Defendant does not qualify for the safety valve. This Court agrees with the probation officer's conclusion. To qualify for the safety valve, a defendant must meet the five conditions set forth in 18 U.S.C. § 3553(f). *See* U.S.S.G. § 5C1.2. The fifth condition (§ 3553(f)(5)) requires the defendant to provide truthfully to the Government "all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." Herein, the Defendant has failed to provide such truthful information by continuing to maintain his innocence. Therefore, this objection is overruled.

10. The Defendant objects to ¶ 29 of the PSR, wherein the probation officer says that he is not entitled to an adjustment, a role reduction for being a minor or minimal participant. The Defendant contends that he was a minor or minimal participant, because he did not distribute any drugs. Although the Government did not introduce evidence that the Defendant distributed drugs, such a lack of evidence does not cause the Court to find that he is entitled to this adjustment. In *United States v. Sabino*, 274 F.3d 1053 (6th Cir.2001), the Sixth Circuit discussed the adjustment for a minor role in an offense:

> The Sentencing Guidelines provide that a sentencing court should decrease an offense level by 2 levels if a defendant is a minor participant in a criminal offense. U.S.S.G. § 3B1.2 (1998). The district court's reduction of an offense level under this guideline is reviewed for clear error. *See United States v. Latouf*, 132 F.3d 320, 332 (6th Cir.1997) (citing *United States v. Miller*, 56 F.3d 719, 720 (6th Cir.1995)). The defendant bears the burden of proof in establishing his entitlement to the reduction. *See id.* "An adjustment is not appropriate in the absence of a finding that the defendant was 'substantially less culpable than the average participant' in the criminal enterprise.'" *Id.* (quoting *Miller*, 56 F.3d at 720). "A defendant whose participation is indispensable to the carrying out of the plan is not entitled to a role reduction." *Id.* (citation omitted).

**7.** Since the Court does not consider the $1.1 million to be relevant conduct (other than the $105,000 Hunter invested in S & S Trading Post), it rejects Defendant's assertion that he is entitled to a reduction for his role in the offense. If the Court had considered the $1.1 million to be relevant conduct, it would quite likely have given the Defendant such a reduction, since he neither helped to generate those funds by being involved in the distribution of cocaine, nor did he conceal them. Moreover, of the $1.1 million Defendant helped Hunter count, he laundered only the $105,000 which Hunter invested in S & S Trading Post. Since the $105,000 has been included in the $190,000, which the Defendant laundered for Hunter, Defendant is being held responsible for $105,000 of the money he helped count. He merely helped count the rest of the $1.1 million and there is no evidence that such action furthered the conspiracy.

*Id.* at 1073–74. When a defendant has played an minimal role in an offense, there is a four point reduction in the base offense level. A defendant who has played a minor role in the offense is entitled to a two point reduction in the base offense level. A defendant's minimal or minor role in an overall conspiracy does not warrant an adjustment under § 3B1.2, where the larger conspiracy was not taken into account in establishing defendant's base offense level. *United States v. Roberts,* 223 F.3d 377, 380 (6th Cir.2000). The Defendant has the burden of proving by the preponderance of the evidence that he is entitled to a reduction in his sentence because he was a minor or minimal participant. *United States v. White,* 985 F.2d 271 (6th Cir.1993). Herein, the Defendant was the primary instigator of the conspiracy as it related to money laundering; he was indispensable to the money laundering. Moreover, his base offense level is predicated upon the amount of money he laundered, not the amount of controlled substances distributed by the overall conspiracy. The larger drug conspiracy in which Hunter was involved, and all the drugs involved therein, will not be taken into account when sentencing the Defendant. Therefore, this objection is overruled.[8]

11. The Defendant objects to ¶ 33 of the PSR, wherein the probation officer has computed the base offense level for the conspiracy to commit income tax fraud at 19. According to the probation officer, the amount of money which the Defendant laundered and, thus, was not reported as income, is $1,168,700. The probation officer has computed the tax loss at between $325,000 and $550,000, which results in a base offense level of 17. That is increased two levels because the unreported income included at least $10,000 from criminal activity in a particular year. The Defendant objects, arguing in essence that he is responsible only for the $190,000, not the entire $1,168,700. Such a conclusion would result in a base offense level of 15 (rather than 19). For the reasons that it has sustained the Defendant's objection to ¶ 25, it sustains the Defendant's objection to this paragraph.

12. The Defendant objects to ¶ 34, wherein the probation officer suggests a two-level increase for the tax conspiracy, because the Defendant encouraged Hunter to file a false income tax return. The Defendant argues that this increase is not warranted, because he did not encourage Hunter to file such a return. This Court cannot agree. The preponderance of the evidence at trial established, and the Court so finds, that the Defendant encouraged Hunter to file such an income tax return. Therefore, this objection is overruled.

13. Defendant objects to ¶ 36 of the PSR, wherein the probation officer recommends the Court decline to give the Defendant a minor or minimal role adjustment for the tax conspiracy. He merely incorporates his objections to ¶ 29 of the PSR, wherein the probation officer recommended that the Court refuse to grant such an adjustment for the drug conspiracy conviction. For the same reasons it overruled Defendant's objection to ¶ 29, his objection to ¶ 36 is overruled.

14. Defendant objects to ¶¶ 51 and 53 of the PSR. According to the Defendant,

---

8. If this Court had concluded that all of the money he helped Hunter count constituted relevant conduct, its conclusion that the Defendant is not entitled a reduction in the base offense level for a minimal or minor role in the offense would have quite conceivably been different. He did not assist Hunter and his

co-conspirators in generating those funds through the distribution of cocaine, nor did he assist Hunter in their concealment. He merely helped Hunter count the money. In addition, Defendant was only involved in laundering $105,000 of the $1.1 million he helped Hunter count.

these paragraphs indicate that criminal history points are being counted for an offense he was convicted of in 1985 and that his criminal history, therefore, is two, rather than one. The revised PSR mentions the particular offense in ¶ 51, but concludes that no criminal history points will flow from it, because of its age. In ¶ 53, the revised PSR recommends that the Court find the Defendant is in criminal history category one. The Court will follow the recommendation in the revised PSR and, thus, will disregard the statement in the initial version of that document that the Defendant has a criminal history of two. Therefore, these objections need not be resolved, "because the controverted matter will not be taken into account in, or will not affect, sentencing."

■ In addition, the Defendant has submitted, *pro se*, a supplemental objection in which he points out that the money laundering guidelines were amended effective November 1, 2001. The Defendant's conviction for money laundering was grouped with his drug conspiracy conviction, and he will be sentenced pursuant to the guidelines for drug conspiracies. Therefore, as the probation officer has stated, the amendment does not affect the Defendant's sentence.

■ In addition to the foregoing objections, the Defendant has raised other points concerning his sentence. *First,* relying upon *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), he argues that the Government was obligated to prove to the jury, beyond a reasonable doubt, the amount of money he laundered, rather than have the Court find it based upon the preponderance of the evidence. The Court cannot agree. Under *Apprendi,* only facts which cause the statutorily imposed maximum penalty to be increased must be proved to the jury beyond a reasonable doubt. The default

sentence for drug conspiracies involving cocaine (with no amount of cocaine alleged in the indictment and/or found by the jury based upon proof beyond a reasonable doubt) is 21 U.S.C. § 841(b)(1)(C), which calls for a maximum sentence of 20 years. The PSR has recommended that the Court sentence the Defendant to 151–188 months incarceration. By having sustained the Defendant's objection to ¶ 25 and, as a result, having found a base offense level of 32, the presumptive sentencing guideline range is 121–151 months. The sentence which this Court will impose upon the Defendant will not exceed 20 years or 240 months. Since the ultimate sentence is less than 20 years, *Apprendi* does not require that the jury determine the amount of money the Defendant laundered. *Accord, United States v. Stines,* 313 F.3d 912, 915–16 (6th Cir.2002) (sentence of less than 20 years for drug trafficking conspiracy involving cocaine did not violate *Apprendi* ).

*Second,* the Defendant seeks to reduce his sentence based upon the evidence presented during the evidentiary hearing. Mulligan testified that Hunter had told them that he had won $150,000 gambling with loaded dice, while Ridley indicated that Hunter had won $20,000 in that manner. The Defendant would have the Court conclude that the $170,000 mentioned by Mulligan and Ridley must be deducted from the amount of money he is being held responsible for laundering, because it was derived from gambling, rather than from drug trafficking. Although the Court agrees with the Defendant's implicit legal premise (his base offense level for a drug trafficking conspiracy cannot be based upon the laundering of funds which were derived from gambling rather than from drug trafficking), the testimony of Mulligan and Ridley does not cause the Court to doubt that the Government proved by the preponderance of the evidence that the Defendant is responsible for laundering

$190,000. Hunter testified that the $190,000 constituted profits from his cocaine distribution conspiracy. Moreover, Hunter gave the Defendant a total of $190,000 to launder by being invested in S & S Trading Post in 1996. Neither Mulligan nor Ridley testified that Hunter had indicated, during 1996, that he had earned the sum in question as a result of gambling with loaded dice. Given Hunter's testimony that he was a prolific spender, it is quite unlikely that Hunter retained any part of the $170,000, mentioned by Mulligan and Ridley, when he gave the $190,000 to Defendant. Consequently, it is highly unlikely that some portion of the $170,000 was included in the $190,000, which the Defendant laundered for Hunter.

*Third,* in his *pro se* submissions to the probation officer, Defendant objected to the failure to recommend that his base offense level be reduced for acceptance of responsibility. Given that the Defendant has never admitted that he engaged in a cocaine distribution conspiracy with Hunter, he has not demonstrated that he is entitled to a reduction for acceptance of responsibility. *United States v. Roberts,* 243 F.3d 235, 241 (6th Cir.2001) (defendant has the burden of proving by the preponderance of the evidence that he is entitled to a reduction for acceptance of responsibility).

During the hearing conducted on March 8, 2002, the Defendant argued that he should be sentenced in accordance with the guidelines for money laundering, rather than those which are applicable to defendants convicted of drug trafficking offenses. *See* Doc. # 83 at 160. To support that argument, the Defendant relied upon *United States v. Morales,* 108 F.3d 1213 (10th Cir.1997). Therein, the Tenth Circuit held that, under the facts of that case, the District Court had permissibly used

the money laundering guidelines, rather than those for drug distribution conspiracies, to determine the defendant's sentence. To reach its holding, the Tenth Circuit applied Application Note 2 to § 1B1.3(a) of the Sentencing Guidelines,[9] which provides:

> With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.

The Tenth Circuit declined to disturb the District Court's factual findings that the Government had failed to prove, by the preponderance of the evidence, that the defendant had been directly involved with drugs, and that his conduct established a quantity of narcotics that was reasonably foreseeable to him. Thus, *Morales* stands for the proposition that a District Court does not abuse its discretion by utilizing the guidelines for money laundering to sentence a person who participated in a drug conspiracy solely as a money launderer, rather than by converting the amount of money laundered to a specific quantity of drugs and then computing the sentence in accordance with the drug quantity tables contained in § 2D1.1.

This Court does not question the holding of the Tenth Circuit in *Morales;* however, it declines to apply that decision in this case. As the Government pointed out in its memorandum analyzing *Morales,* the Defendant was far more than a simple money launderer. *See* Doc. # 78. For instance, Defendant traveled to Dayton in late September, 1996, after Hunter's and Jones' residences had been searched and an arrest warrant had been issued for

---

9. Section 1B1.3(a) defines relevant conduct.

Hunter, and took Hunter to Detroit, in order to concoct a story that would explain the existence of the large amount of currency which was found in those locations. Accordingly, the Court overrules the Defendant's request that he be sentenced in accordance with *Morales*.

On August 9, 2002, the Defendant, acting *pro se*, filed a supplemental objection to the PSR. *See* Doc. # 82. In that submission, the Defendant relies upon *United States v. Campbell*, 279 F.3d 392 (6th Cir. 2002), and *United States v. Humphrey*, 287 F.3d 422 (6th Cir.2002), and argues that the sentence proposed in the PSR will violate *Apprendi*. For reasons set forth above, the Court cannot agree. The Defendant also argues that those decisions stand for the proposition that *Apprendi* is applicable to mandatory minimum sentences. Since the Supreme Court has rejected that argument in *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), the Court cannot agree with Defendant that *Apprendi* is applicable to mandatory minimums. Accordingly, the Court overrules the Defendant's Supplemental Objections to the PSR (Doc. # 82).